CHICAGO GREAT WESTERN RY. CO. v.
HOPKINS et al.

Civil No. 497.

District Court, D. Minnesota,
Fourth Division.

Nov. 10, 1942.

Stearns & Stearns, of St. Paul, Minn., for plaintiff.

S. R. Moore, of Minneapolis, Minn., for defendants.

NORDBYE, District Judge.

If the defense is sustainable, the question as to whether any undercharges are in fact due need not be decided. Briefly stated, the defense interposed is this: That the defendants are not liable for any undercharge which may be due because the bills of lading under which the shipments were carried provided by a signed stipulation that there should be no recourse against the consignors if delivery was made to the consignees without requiring payment of all freight charges.

The shipments went forward under uniform bills of lading and delivery was accepted by the consignee. The defense now urged is bottomed on the so-called "no recourse clause," which reads as follows:

"Subject to Section 7 of conditions, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement:

" 'The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.'

"(Sgd) H. A. Hopkins WDM

"(Signature of Consignor)".

Section 7 of the terms and conditions is not pertinent under the stipulated facts herein, but the following portion thereof tends to amplify and clarify the effect of the so-called "no recourse clause": "Sec. 7. * * * The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor (except as hereinafter provided) shall not be liable for such charges."

The bill of lading contains another provision, however, known as the "prepay clause" which was filled in by the defendants and which must be given careful consideration. This clause or provision reads: "If charges are to be prepaid, write or stamp here, 'To be Prepaid.'" (The following was inserted on the bill immediately below the above): "To be prepaid 30,-000 lbs at 5¾¢".

■ It is clear that the shipper may, by contract with the carrier, absolve himself from any liability for freight charges, whether such charges are those which are initially computed or by way of un undercharge subject to the rule which prohibits discrimination. That is, the law is satisfied if someone is made liable for the freight charges, and if the consignee is made solely responsible therefor under the contract, the law is not contravened. Louisville & Nashville R. Co. v. Central Iron Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900; In the Matter of Transportation of Company Material, 22 I.C.C. 439; In the Matter of Bills of Lading, 52 I.C.C. 671–721; New York Central R. Co. v. Trans-American Petr. Corp., 7 Cir., 108 F.2d 994, 129 A.L.R. 206; New York Central R. Co. v. Little-Jones Coal Co., D.C., 25 F.Supp. 337; Lowden v. Iroquois Coal Co., D.C., 18 F. Supp. 923.

■ Upon delivery to, and acceptance by, the consignee of a shipment under a "no recourse clause" in the bill of lading, the carrier agrees to look to the consignee for any and all charges remaining unpaid, and the consignee in accepting such shipment carried in pursuance of such bill of lading, agrees to pay any and all lawful charges. Pittsburgh, C., C. & S. L. Ry. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151. But in this bill of lading where the "no recourse clause" has been executed, the shippers designated the shipment as prepaid, at least to the extent of

the computation of charges indicated thereon. The query therefore arises, Does the fact that the "prepay proviso" was filled in by the shippers as indicated nullify the "no recourse clause" signed by the shippers?

Presumably, a consignor could arrange with a carrier to pay part of the freight charges, and then by signing the "no recourse" proviso secure exemption from the balance or any additional lawful charges. In fact, this arrangement is tacitly recognized by the form of receipt which will be found on the face of the uniform bill of lading, which reads as follows:

"Received $——— to apply in prepayment of charges on the property described hereon.

"————————————————————
"Per ————————————————
Agent or Cashier
"(The signature here acknowledges only the amount prepaid)."

It is urged, however, that there is an irreconcilable conflict between the "prepay clause" as filled in herein and the signed "no recourse clause." However, a reasonable analysis and interpretation of both provisions should dispel any real doubt as to the intention of the parties or the effect of their covenants. It must be assumed that the shippers and the carrier intended that both provisions should be vital, and therefore, if any apparent inconsistency can be reconciled and effect given to both pertinent clauses, the contract of the parties should be upheld. It is common knowledge that undercharges frequently arise in freight transportation by reason of many conditions and circumstances. It does not appear from the stipulated facts whether the defendants were the owners of the freight which was shipped. In any event, they agreed to prepay the freight in accordance with the computation noted on the bill of lading. Presumably, both parties assumed that such prepayment was a payment of all lawful charges. But at the same time the defendant consignors stipulated with the carrier that the delivery to the consignee would be without recourse on them. In other words, it is fair to assume that the parties intended that any lawful charges in addition to those paid must be collected from the consignee if delivery was accepted by such consignee under the contract which the consignor and the carrier had entered into. This interpretation of the agreement between the parties seems eminently fair and reasonable. Certainly, the situation herein will not warrant a finding that the parties indulged in a futile and aimless thing when they entered into the "no recourse clause." It is reasonable to believe that they did so for some purpose, and the purpose as herein indicated and construed is entirely consistent and compatible with the prepayment of the freight charges as computed by the parties. This construction squares not only with the apparent intent of the parties, but does not violate the rights of the consignee. The latter, upon receipt of the freight, was informed that there would be no recourse on the consignor for any freight charges or other lawful charges in addition to that which had been paid. The consignee therefore accepted the shipment with knowledge that he alone must respond for any deficiency in the freight charges. Pittsburgh, C., C. & S. L. Ry. Co. v. Fink, supra. It is my opinion, therefore, that the "no recourse" contract entered into between the consignors and the carrier discharges the consignors from any claim of undercharges after the shipment has been received and accepted by the consignee under the uniform bill of lading as executed herein.

Findings of fact and conclusions of law in harmony herewith may be presented by counsel for the defendants upon five days' notice. An exception is reserved to the plaintiff.