Walter M. **KATZENBERGER** and Ruth C. Katzenberger, Plaintiffs and Appellants,

v.

**STATE of Utah, Salt Lake City Corporation, Utah State Department of Transportation, and Western Utility Contractors, Inc., dba Westcon, Defendants and Respondents.**

No. 860020–CA.

Court of Appeals of Utah.

April 15, 1987.

Rehearing Denied June 23, 1987.

David L. Wilkinson, State Atty. Gen., Steven C. Ward, Asst. Atty. Gen., for State of Utah.

Roger F. Cutler, Salt Lake City Atty., Ray L. Montgomery, Asst. City Atty., Salt Lake City, for Salt Lake City Corp.

Jackson Howard, Leslie W. Slaugh, Provo, for Westcon.

Before BENCH, GARFF and GREENWOOD, JJ.

## OPINION

BENCH, Judge:

Plaintiffs Walter and Ruth Katzenberger appeal from a summary judgment dismissing their action for reformation of a deed and from a judgment against them for trespass and intentional interference with contractual relations. We reverse the summary judgment and remand the case for trial.

In early September, 1970, plaintiffs contacted the then Utah Department of Highways, now defendant Utah Department of Transportation, to inquire about purchasing a small pie-shaped piece of property located between the eastern boundary of their property and the I–215 Belt Route fence. Letter and telephone negotiations ensued. The State indicated a willingness to sell the property, and quoted a price of $25.00. On November 10, 1970, Ruth Katzenberger mailed a check in that amount to the State Road Commission. In a cover letter which accompanied the check, she indicated the check was "for [the] property we have discussed", and requested a deed be prepared in accordance. On November 30, Max Williams, then Property Management Supervisor for the Department of Highways, sent a memorandum asking John Homer, Right-of-Way Design Engineer, to prepare a quitclaim deed for the subject property. In this memorandum, Mr. Williams referred to the property as Parcel No. 295:ST. A quitclaim deed was prepared, describing the entire piece of property requested by the Katzenbergers and referring to it as Parcel No. 415–9:295:STAQ. The Department of Highways never recorded this deed nor delivered it to the Katzenbergers.

In another later memorandum dated February 5, 1971, S.C. Cockayne, then Chief of the Right-of-Way Division, notified Henry C. Hellend, Director of Highways, that the parcel had been sold and asked him to execute a quitclaim deed. This memoran-

dum referred to the property as Parcel No. 195:ST. The deed executed by Mr. Hellend and recorded on February 10 conveyed only a portion of the parcel requested by plaintiffs and described in the first quitclaim deed. The recorded deed was sent to plaintiffs along with a cover letter dated May 19, 1971. The letter referred to the property as Parcel No. 295:STQ. At no time did the State or any of its departments inform plaintiffs that the executed and recorded deed included less property than originally discussed. For the next eleven years, plaintiffs cared for, improved, and occupied the entire parcel with no interference.

On February 5, 1982, the Department of Transportation issued a license to co-defendant Salt Lake City to install a large new water conduit to replace the old Big Cottonwood conduit. Plaintiffs learned in May that the planned conduit would run directly through the pie-shaped piece of property. Mr. Katzenberger wrote to the City. In the letter, he claimed ownership of the property and suggested the City or the State purchase his entire property to avoid any problems. Katzenberger wrote another letter on June 6, this one addressed to Leroy W. Hooton, Director of the City Department of Utilities. Katzenberger again suggested a sale and also expressed concern as to the possible damage the excavation of a large trench could do to his home. Katzenberger received no replies, so, on July 29, he notified the City and the State that he would take his concerns to court. In two reply letters, Mr. Hooton and Bradley M. Powell, the project engineer, informed plaintiffs that a title search revealed the conduit would not run through their property. The men also assured the work would cause no damage to plaintiffs' home. Katzenberger went to the County Recorder's office and, for the first time, discovered the alleged error in the deed. He contacted Mr. Powell, explained the problem, and asserted ownership of the entire parcel. Katzenberger filed a request with the State of Utah to reform the deed. The State refused.

Salt Lake City contracted with co-defendant Westcon to install the conduit. In November, 1982, Westcon approached plaintiffs' property only to find plaintiffs' vehicle parked directly in the path of the projected conduit. Katzenberger refused a request to move his car. A deputy sheriff, called out to investigate, ordered Westcon to shut down the project, apparently worried about threats made by Katzenberger. An on-site meeting between the parties on November 15 failed to persuade Katzenberger who again asserted his ownership of the property and refused to move his car. The following afternoon, November 16 at 4:00 p.m., a hearing was held before the Honorable Timothy Hanson, Third District Court. At the hearing, Salt Lake City and Westcon sought an order which would allow the project to proceed. Judge Hanson held the court had no jurisdiction over the matter since no complaint had been filed. Nevertheless, at the hearing, Katzenberger agreed to move his car. The conduit was ultimately installed.

Plaintiffs filed a complaint for reformation of the deed on November 18, 1982. Defendants Salt Lake City and Westcon counterclaimed for damages incurred during the work stoppage on the basis of intentional interference with contractual relations. The State of Utah filed a motion for summary judgment in which Salt Lake City joined. The court granted the motion August 22, 1983, ruling as follows:

> [A]fter considering the arguments as presented in the memorandums that were submitted by all the parties and after hearing oral argument and being fully apprised in this matter, [the Court] finds that no genuine material issue of fact exists and consequently as a matter of law, this Court grants [the motion].

Plaintiffs filed a Petition for Interlocutory Appeal which was denied by the Supreme Court.

The trial proceeded on defendants' counterclaims against the plaintiffs. The court found in favor of defendants and, based on defendants' evidence, ordered plaintiffs to pay damages in the amounts of $5,408.22 to Salt Lake City and $41,410.18 to Westcon. Plaintiffs filed a Notice of Appeal on April 11, 1984.

## I

On appeal, plaintiffs first contend the trial court erred in granting summary judgment on their claim for reformation. The right to reform a written instrument, such as a quitclaim deed, "is given, at least in part, so as to make the written instrument express the bargain the parties previously orally agreed upon." *Sine v. Harper*, 118 Utah 415, 222 P.2d 571, 578 (1950); affirmed in *Jensen v. Manila Corporation of the Church of Jesus Christ of Latter-Day Saints*, 565 P.2d 63 (Utah 1977). To reform a written instrument, "the plaintiff must show mutual mistake of the parties or mistake on the part of one and fraud or inequitable conduct on the part of the other." *Bown v. Loveland*, 678 P.2d 292, 295 (Utah 1984). Therefore, material facts in an action for reformation of an instrument include the original intent of the parties, mutual mistake, and/or unilateral mistake coupled with fraud or inequitable conduct on the part of the other party. Plaintiffs failed to plead mutual mistake or fraud in their complaint and are therefore precluded from basing their appeal on these grounds. Utah R. Civ. P. 9(b); *Neeley v. Kelsch*, 600 P.2d 979 (Utah 1979). Plaintiffs did, however, plead the second ground for reformation of a written instrument, mistake on their part and inequitable conduct on the part of defendant State of Utah.

## II

Summary judgment is available "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). In ruling on a motion for summary judgment, a court must consider all of the facts and evidence presented, and every reasonable inference arising therefrom, in a light most favorable to the party opposing the motion. *Bowen v. Riverton City*, 656 P.2d 434 (Utah 1982); *Morris v. Farnsworth Motel*, 123 Utah 289, 259 P.2d 297 (1953).

Plaintiffs' amended complaint, dated January 28, 1983, alleges:

> Plaintiffs were unilaterally and justifiably ignorant of the failure of the subject Quit Claim Deed to fully describe the entire tract purchased by Plaintiffs and the State engaged in inequitable conduct in failing to: (1) advise Plaintiffs of the limited area described in said deed; (2) the failure of said deed to include the entire area set forth in Plaintiffs' offer to purchase; or (3) advise or request Plaintiffs to remove their improvements constructed within the disputed area for a period in excess of ten years.

Plaintiffs made similar allegations in their depositions, dated March 22, 1983. Defendants, in their motion for summary judgment, do not address the claimed inequitable conduct but rely solely on unilateral error by plaintiffs in not examining the description in the deed.

In viewing the pleadings, depositions, and other evidence, and every reasonable inference arising therefrom, in a light most favorable to plaintiffs, genuine issues of material fact clearly exist. For example, what was the original intent of the parties? What inequitable conduct, if any, occurred? The trial court erred, therefore, in granting defendants' motion. The summary judgment is reversed and the case is remanded for trial on plaintiffs' complaint.

If, after trial, plaintiffs are successful in having the deed reformed, then the judgment on the counterclaim is null and void.[1] If, however, plaintiffs are unsuccessful in a trial on their complaint, then the judgment on the counterclaim remains effective. Because of that possibility, we will address the other issues raised by plaintiffs on appeal.

## III

Plaintiffs contend the court erred in denying their request for a jury trial. On

---

1. The general rule is that reformation of a deed relates back to, and takes effect from, the date of conveyance, and is binding on all except bona fide purchasers without notice and those standing in similar relations. *L.E. Myers Co. v. Harbor Insurance Co.*, 67 Ill.App.3d 496, 24 Ill. Dec. 182, 384 N.E.2d 1340 (1978), and cases cited therein.

May 12, 1983, plaintiffs filed a Certificate of Readiness for Trial and waived a jury trial. The court issued its first scheduling order and trial notice on June 15, which stated that if a jury trial were requested, the fee must be paid within ten days of the order. A second scheduling order and trial notice issued October 31 scheduled the trial for January 5, 1984. Again, the same condition for jury trial was stated. Plaintiffs filed a request for a jury trial on December 19, which request was denied at a hearing on January 3.

Rule 4.2 of the Rules of Practice in the District Courts states:

> Cases will be set for jury trial only upon the filing of a written request for trial setting and the payment of the required statutory fee. Such written request for trial setting, or written demand, and demands for jury trial must be filed at least ten (10) days prior to trial or at such other time as the trial judge may order.... Any case originally set for trial without a jury may be set for jury trial provided that written notice and payment of the jury fee is deposited with the clerk of the court within the time provided herein.

■ Plaintiffs filed a request for jury trial and paid the fee on December 19, 1983, eighteen days prior to trial. However, the rule states the request must be filed "... at least ten (10) days prior to trial *or at such other time as the trial judge may order.*" (Emphasis added). On two occasions, the trial court issued an order requiring the jury fee, if any, to be paid within ten days of the scheduling order and trial notice. The last notice was issued on October 31. The trial court acted well within its discretion in making such an order, and plaintiffs were required to comply with the order. The trial court's order denying plaintiffs' request for a jury trial is therefore sustainable.

## IV

■ Plaintiffs next contend the trial court erred in allowing Westcon to amend its counterclaim during closing arguments to include an action for trespass. "[T]he granting of leave to amend is a matter which lies within the broad discretion of the court, and its rulings are not to be disturbed in the absence of a showing of an abuse of discretion resulting in prejudice to the complaining party." *Girard v. Appleby*, 660 P.2d 245, 248 (Utah 1983). In Westcon's action for intentional interference with contractual relations, the pleadings and the evidence presented were sufficient to establish trespass. The amendment, therefore, simply restated what had already been pleaded and resulted in no prejudice to plaintiffs. The trial court did not abuse its discretion in allowing Westcon to amend its counterclaim.

## V

■ Finally, plaintiffs contend the trial court erred in calculating damages on defendants' counterclaim. The general rule is the trial court's award for damages will be affirmed on appeal if there is a "reasonable basis in evidence" to support it. *Holman v. Sorenson*, 556 P.2d 499, 500 (Utah 1976). We have reviewed the record in the instant case and find a reasonable basis in evidence for the damages awarded, except for one discrepancy we feel compelled to bring to the trial court's attention. The original award included a $2,960.00 award to Westcon for two 66" × 3'2" short joints and an award of $38,178.18 to Westcon for labor and equipment charges caused by the delay. Our review of the exhibits upon which the court based its award indicates the $2,960.00 for the short joints was included in the $38,178.18 for labor and equipment charges. Therefore, the trial court apparently compensated Westcon twice for the short joints. This discrepancy should be corrected if plaintiffs lose on their claim for reformation.

Reversed and remanded for further proceedings consistent with this opinion.

GARFF and GREENWOOD, JJ., concur.